UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re BEVERLY ANN THOMAS AND WILLIAM BERNARD THOMAS, DBA UNCLE WILLIE'S BARBEQUE AND SOUL FOOD,

No. C 12-0139 PJH
Bankr. Case No. 11-44345 WJL

**ORDER RE BANKRUPTCY APPEAL**

Debtors/Appellants.
_____/

The former attorney for debtors Beverly Ann and William Thomas, Bruce Zelis ("Zelis"), appeals the bankruptcy court's December 7, 2011 ruling and subsequent December 20, 2012 order disqualifying him, denying attorney's fees, and requiring him to disgorge the $15,000 retainer he received in conjunction with debtors' case.  For the reasons that follow, the court REVERSES AND REMANDS the matter to the bankruptcy court.

**BACKGROUND**

**A.   Factual and Procedural Background**

On April 22, 2011, Zelis filed a chapter 11 bankruptcy petition on behalf of debtors. Prior to the filing, Zelis was referred to debtors by Willie E. Phillips, an attorney who was subject to disciplinary proceedings at the time and was subsequently on July 27, 2011 disbarred based on misconduct in bankruptcy cases including misappropriating client funds, failing to communicate with clients, and for charging and/or collecting illegal fees. Zelis and Phillips knew each other well, and had shared law offices in the past.  On March

28, 2011, Zelis accompanied Phillips to a pre-filing meeting with debtors, at which time the debtors' son paid $15,000 to Zelis as a retainer. Debtors subsequently signed a retainer agreement with Zelis that same day.

After filing the chapter 11 petition, on May 6, 2011, debtors filed an application under Bankruptcy Code § 327(a) seeking permission to employ Zelis. In conjunction with the application, Zelis filed a declaration required by Federal Rule of Bankruptcy Procedure ("FRBP") 2014. Several weeks later, on May 31, 2011, Zelis filed an amended employment application. None of the employment applications or accompanying declarations disclosed Zelis' connection with Phillips or the arrangement that debtors' son was the person responsible for paying Zelis' fees. On June 3, 2011, the bankruptcy court granted the § 327(a) application to appoint Zelis as debtors' chapter 11 bankruptcy counsel.

Several months later, on October 17, 2011, debtors filed a pro se motion for an extension of time to file their chapter 11 plan and disclosure statement. In their motion, debtors asserted that Zelis and "his associate Willie E. Phillips" had failed to properly represent them. The motion revealed that in spite of his inability to practice law, debtors apparently believed that Phillips was a practicing lawyer, and that both Phillips and Zelis were involved in their bankruptcy case.[1]

After several subsequent status conferences and a meeting with the United States Trustee's ("UST") counsel, Zelis withdrew as debtors' counsel. Thereafter, on November 11, 2011, Zelis filed an application for attorneys fees by which he sought the bankruptcy court's approval of $29,070 in fees and $1,620.60 in costs, with a credit for the $15,000 retainer already paid. Both debtors and the UST objected to Zelis' fee request. Debtors, who filed their objections pro se, initially complained about Zelis' performance pertaining to a loan modification agreement, the chapter 11 plan he submitted to the bankruptcy court for its approval, and a time entry on his billing statement.

---

[1] Zelis denied that Phillips was providing any substantive assistance, and stated that he was only a "courier" assisting him free of charge.

2

1  The UST, on the other hand, objected based on information discovered during a
2  November 3, 2011 debtors' examination that suggested that the debtors believed that
3  Phillips was their primary attorney, and based on the UST's belief that Phillips and Zelis
4  had an arrangement in which Zelis had actually formed a partnership with Phillips, a
5  disbarred lawyer, in violation of the California Rules of Professional Conduct.  The UST
6  further noted that Phillips had received $600 in compensation from the debtors in
7  conjunction with consultation on their case.  It noted that Zelis failed to disclose the
8  compensation Phillips received in connection with his employment application, and that the
9  non-disclosure warranted the denial of his fee application.

Following the UST's objection, debtors subsequently filed another objection to Zelis'
fee application in which they noted that Zelis had misrepresented that he was using a
disbarred attorney to help him prepare their case and that he had failed to fully disclose
where their payments were going.

In response to the objections, Zelis filed a declaration in which he asserted that
Phillips, who traveled into Oakland regularly, would pick up documents in debtors' case
from Zelis in Walnut Creek and drop them off in Oakland.  Zelis noted that he did not pay
Phillips for his assistance as a messenger, and that Phillips felt like he "owed" Zelis for
representing him in a State Bar case previously.  A hearing was held on December 7, 2011.

### B.   Bankruptcy Court Hearing and Ruling

The bankruptcy court's specific findings and rulings are reflected in the transcripts of
the December 7, 2011 hearing as it issued only a summary order on December 20, 2011.

At that hearing, the court found that with respect to the debtors' case, Phillips had
engaged in the unauthorized practice of law, and had not engaged simply in business
consulting.  It noted that it would deal with and report Phillips outside of the scope of the
hearing on Zelis' fee application.[2]  The court noted that there was somewhat of a factual

---

[2]Presumably, the bankruptcy court suggested that it would report Phillips to the California State Bar.  *See* December 7, 2011 transcripts at 5 (noting that "what I do about . . . the unauthorized practice of law. . . is outside the scope of this hearing," and that "I think I

dispute regarding Phillips' actual involvement in the case, and that debtors testified at their depositions to a "long-term and very involved" role for Phillips.

However, the court focused in on another issue not addressed by the parties in their motion and objection papers. The court queried Zelis regarding whether and at what point he had disclosed to the court the fact that the debtors' son paid his retainer in the case. Zelis suggested that the fact was contained in his employment application, but both the court and the UST questioned whether that was the case. The court inquired why Zelis' failure to disclose the information did not automatically preclude an award of fees under the Ninth Circuit's decision in *In re Park–Helena Corp.*, 63 F.3d 877, 880 (9th Cir. 1995), and in *Movitz v. Baker* (*In re Triple Star Welding, Inc.*), 324 B.R. 778, 788 (9th Cir. BAP 2005), *partially abrogated on other grounds, Dye v. Brown (In re AFI Holdings, Inc.),* 530 F.3d 832 (9th Cir. 2008).

The court noted that a chapter 11 bankruptcy case is a "different animal" from chapters 7 and 13 given the debtor's and the debtor's attorney's roles as fiduciaries for the creditors. Accordingly, full and accurate disclosure regarding the source of the retainer is required because "[t]he court and the creditors have to know everything to make an accurate assessment as to whether an attorney is disinterested and able otherwise to take on the very difficult duties of representing a debtor in possession." December 7, 2011 Transcripts at 13.

In response, the UST argued that the failure to disclose the source of a retainer was grounds for disgorgement of all fees and for denial of other attorney's fees. Additionally, it argued that compensation the debtors provided to Phillips should have been disclosed as well. It contended that given the circumstances, which included Phillips' experience in bankruptcy cases and Zelis' inexperience in bankruptcy cases, it simply wasn't credible for Zelis to assert that Phillips served simply as a "consultant" or a "courier."

The court afforded Zelis the opportunity for a final response, but Zelis stated that he

---

have an obligation to report it").

4

1  had nothing to add.  December 7, 2011 Transcripts at 14.

2        The court then found that with respect to the source of the retainer, Zelis failed to satisfy the high standard for disclosure required by the Ninth Circuit in *Park-Helena.* 63 F.3d at 880.  It stated that under *Park-Helena*, the court had "virtually no choice but to mete out a very harsh punishment," which it was going to do.  The court then disqualified Zelis and ordered that all fees be disgorged.

      The court also noted that it appeared that the UST also had a case for nondisclosure based on Zelis' relationship with Phillips.  It found that the nature of the relationship was "somewhat ambiguous," but that it appeared that Phillips provided "advice" to the debtors.  However, it is unclear from the transcripts whether the court actually ruled or intended to rule on the issue.

      Ultimately, the court noted that it was not unsympathetic to the amount of work Zelis had put into debtors' chapter 11 case, but held that it was nevertheless required to order his disqualification and the disgorgement of fees.

      On December 20, 2011, the bankruptcy court signed the proposed order prepared by the UST, which simply stated that "[c]ounsel shall disgorge $15,000 of the retainer."[3]

      Zelis appealed and elected to have this court rather than the Ninth Circuit Bankruptcy Appellate Panel adjudicate the appeal.

**ISSUES**

Zelis argues on appeal:

(1) that the bankruptcy court erred in finding that he failed to disclose the source of the retainer payment because documents filed with the debtors' bankruptcy schedules on May 6, 2011, and on May 31, 2011, a Rule 2016(b) Statement and a Statement of Financial Affairs, respectively, fully disclosed that the debtors' son had made the retainer payment; and

---

[3] Zelis objected to the fact that the order failed to include findings of fact and conclusions of law as set forth on the record, but the court signed the order over Zelis' objections.

5

(2) based on the disclosures in the above two documents, the bankruptcy court erred in ruling that all legal fees should be denied and the retainer disgorged under Ninth Circuit law.[4]

## DISCUSSION

**A.   Standard of Review**

This court reviews bankruptcy court orders regarding employment, disqualification, and compensation of professionals for abuse of discretion.  *See In re Triple Star Welding*, 324 B.R. at 788; *COM–1 Info, Inc. v. Wolkowitz* (*In re Maximus Computers, Inc.*), 278 B.R. 189, 194 (9th Cir. BAP 2002).  An abuse of discretion occurs if the bankruptcy court bases its ruling upon an erroneous view of the law or clearly erroneous factual findings.  *See Hansen v. Moore* (*In re Hansen*), 368 B.R. 868, 875 (9th Cir. BAP 2007).

**B.   Zelis' Appeal**

  **1.   Motion to Stay**

In his opening brief, Zelis states that he requested that this court stay the bankruptcy court's disgorgement order.  However, review of the respective dockets reveals that Zelis failed to file that motion with this court, and instead filed it with the bankruptcy court.  The motion was not transmitted to this court, and accordingly, this court was without any notice of Zelis' pending motion until its review of the appellate briefs in conjunction with its consideration of the merits of the appeal.  Given that the court is now prepared to rule on the appeal, the request to stay the bankruptcy court's order is denied as moot.

  **2.   Parties' Arguments**

In his opening motion, Zelis asserts that the bankruptcy court overlooked the fact that his Rule 2016 fee disclosure form filed on May 6, 2011 with debtors' bankruptcy schedules disclosed that the retainer was paid by the debtors' son.  He also asserts that a statement of financial affairs that he filed with the debtor's bankruptcy schedules on May

---

[4], Zelis has set forth four separate issues in his statement of the issues, but the court finds that they actually present only the two issues noted above.

6

31, 2011 disclosed the source of the retainer. He thus seeks reversal based on these two disclosures.

In opposition, the UST does not dispute that Zelis disclosed the source of the retainer in the two documents included with the bankruptcy court schedules filed in May 2011. However, the UST argues that the bankruptcy court's order should nevertheless be affirmed because the documents in which Zelis disclosed the information serve different purposes than the Rule 2014(a) declaration included with his initial employment application. It further argues that the bankruptcy court was not required to hunt through all of the documents filed by Zelis to determine whether adequate disclosure of the source of the retainer had been made, and that the bankruptcy court was entitled to rely solely on its review of Zelis' employment application.

Alternatively, the UST argues that Zelis' failure to disclose the extent of his relationship with Phillips supports the bankruptcy court's disqualification and disgorgement order.

In their amicus brief, debtors echo the UST's arguments that disqualification and disgorgement were warranted based on Zelis' failure to disclose the retainer information in his Rule 2014(a) declaration. They also contend that the other disclosures were not sufficient to cure the non-disclosure in that declaration.

In reply, Zelis suggests that the bankruptcy judge stated that he would have ruled to the contrary if he had found information in the record in which Zelis disclosed the source of the retainer.

**3.    Analysis**

Employment as an attorney for the debtor in possession in a chapter 11 case is governed by § 327(a) of the Bankruptcy Code, which requires court approval for the attorney's employment. The bankruptcy court is charged with "ensur[ing] that attorneys who represent the debtor do so in the best interests of the bankruptcy estate." *Park–Helena.*, 63 F.3d at 880. Under § 327, an attorney for a debtor cannot "hold or

represent an interest adverse to the estate;" he or she must be a "disinterested person." 11 U.S.C. § 327(a).[5]

To enable the Bankruptcy Court to evaluate an attorney's potential employment, Federal Rule of Bankruptcy Procedure 2014(a) requires that an application for employment of an attorney under § 327 "shall be accompanied by a verified statement of the person to be employed setting forth the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." Rule 2014 requires disclosure of "any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee." This disclosure requirement is applied "strictly." *Park–Helena*, 63 F.3d at 881.

An attorney approved for employment under § 327 must apply for interim or final compensation, which is subject to approval of the Bankruptcy Court. *See* 11 U.S.C. §§ 328–31. Rule 2016(a) requires an attorney seeking compensation and/or reimbursement of expenses to file an application "setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." The fee application must also include "a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, [and] the source of the compensation so paid or promised." *Id.* After notice and a hearing, the court may award "reasonable compensation for actual, necessary services rendered," as well as "reimbursement for actual, necessary

---

[5] Any creditor of the estate, or anyone with "an interest materially adverse to the interest of the estate. . . by reason of any direct or indirect relationship to, connection with, or interest in, the debtor," is not a disinterested person. 11 U.S.C. §§ 101(14)(A), (C). A "creditor" includes any "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," § 101(10)(A), and a "claim" includes any "right to payment," § 101(5)(A).

expenses." § 330(a)(1).

Pursuant to the disclosure rules of §§ 327 and 329 and Rules 2014 and 2016, the attorney has the duty to disclose all relevant information to the court, and may not exercise any discretion to withhold information. *See Park–Helena*, 63 F.3d at 880, 882. "The purpose of such disclosure is to permit the bankruptcy court and parties in interest to determine whether the connection disqualifies the applicant from the employment sought, or whether further inquiry should be made before deciding whether to approve the employment. This decision should not be left to counsel, whose judgment may be clouded by the benefits of the potential employment." *In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988).

Applying the disclosure rules to a request for fees, "[i]f [ ] an attorney holds an undisclosed adverse interest, the court is empowered to deny all compensation and reimbursement of expenses." *Coastal Equities*, 39 B.R. at 308; *Park–Helena,* 63 F.3d at 881 (denying all fees where attorneys had failed to comply with disclosure requirement of 11 U.S.C. § 329 to disclose the source of a retainer). More broadly, "failure to comply with the disclosure rules is a sanctionable violation, even if proper disclosure would have shown that the attorney had not actually violated any Bankruptcy Code provision or any Bankruptcy Rule." *Park–Helena*, 63 F.3d at 880.

The duty to disclose extends to "[a]ll facts that may be pertinent to a court's determination of whether an attorney is disinterested or holds an adverse interest to the estate," regardless of whether the attorney thinks the information is sufficient to render him adversely interested. *Id.* at 882. Additionally, "[n]egligent or inadvertent omissions do not vitiate the failure to disclose," and such a failure "may result in a denial of all requested fees." *Id.* at 881-82.

There is no dispute here that Zelis' § 327 employment application and accompanying Rule 2014 declaration did not disclose the source of payment of the retainer. There is also no dispute that the two documents referenced by Zelis and filed in

May 2011 indeed referenced the source of the retainer payments. Accordingly, the issue is whether the bankruptcy court erred in ordering disqualification and disgorgement given the disclosure in those documents.

Here, the bankruptcy court appears to have erroneously found that Zelis failed to disclose the source of the retainer agreement in any of the documents filed before it. This finding was based on an erroneous view of record. This error was understandable given the fact that the bankruptcy court decided the attorney's fees motion on an issue not briefed by the parties, and therefore the retainer disclosure issue was not fully flushed out at the time of the hearing. The UST trustee is correct that the purposes of the Rule 2016(b) statement and the financial statement, the documents in which the source of the retainer was disclosed, differ from the purpose of a Rule 2014(a) declaration. However, the bankruptcy court was not without discretion to consider the fact that Zelis had in fact disclosed the information in the other documents.

The bankruptcy court has discretion to excuse a failure to disclose. *See In re Song*, 2008 WL 6058782 at *10 (9th Cir. BAP 2008) (citing *First Interstate Bank, NA v. CIC Inv. Corp.* (*In re CIC Inv. Corp.*), 175 B.R. 52, 54 (9th Cir. BAP 1994)). Once the bankruptcy court acquaints itself with the true facts, it "has considerable discretion in determining to allow all, part or none of the fees and expenses of a properly employed professional." *In re Triple Star Welding, Inc.*, 324 B.R. at 793*; see also Film Ventures Int'l, Inc. v. Asher* (*In re Film Ventures Int'l, Inc.*), 75 B.R. 250, 253 (9th Cir. BAP 1987) ("[T]he trial court is in the best position to resolve disputes over legal fees."). If the bankruptcy court finds no need to take remedial measures, it appropriately can do so in the exercise of its discretion. *See Song*, 2008 WL 6058782 at *10 (citing *Film Ventures Int'l, Inc.*, 75 B.R. at 253).

Here, had the bankruptcy court been aware of the "true fact[]" that Zelis had disclosed the source of the retainer in the other documents, this information may have impacted the court's decision. *See In re Triple Star Welding, Inc.*, 324 B.R. at 793. In fact, the bankruptcy court itself noted on the record at the hearing that it may have ruled the

10

other way had it been aware of such disclosure.  *See* Transcripts at 12 ("there was a failure to disclose with respect to the retainer, which I don't think is – I mean I looked at the pleadings myself to make sure I didn't have this wrong – *if it's somewhere else, I'm prepared to change my mind about that*, but it looks to me as if the source of the retainer was not disclosed") (emphasis added).

Moreover, this court finds that the bankruptcy court's ruling was based primarily, if not entirely, on the lack of disclosure of the retainer payment.  As noted, the bankruptcy court did not enter any written findings of fact or conclusions of law, and its ruling regarding Zelis' disclosure, or lack thereof, of his relationship with Phillips is not clear from the hearing transcripts.  Given that the bankruptcy court is in the best position to make factual findings regarding the relationship between Zelis and Phillips, whether Zelis failed to disclose such information, and the impact of such failure on Zelis' fee application, the court declines the UST's invitation to rule on this issue in the first instance on appeal.

In sum, in light of the bankruptcy court's clearly erroneous view of the factual record, the court REMANDS the matter to the bankruptcy court to consider whether disgorgement and disqualification are required in light of the retainer-related disclosures made by Zelis in his Rule 2016 statement and in the debtor's financial statement, and if disqualification is not required on these grounds, to determine if the other ground advanced by the UST warrants disqualification and disgorgement.

## CONCLUSION

For the reasons set forth above, the court REVERSES the bankruptcy court's December 7, 2011 ruling and subsequent December 20, 2012 order disqualifying Zelis, denying attorney's fees, and requiring Zelis to disgorge the $15,000 retainer he received in conjunction with debtors' case, and REMANDS this matter for further proceedings consistent with this order.

*////*

*////*

11

This order fully adjudicates the appeals and terminates all pending motions. The clerk shall close the file.

**IT IS SO ORDERED.**

Dated: August 6, 2012

_____
PHYLLIS J. HAMILTON
United States District Judge

cc: Clerk of the Court, United States Bankruptcy Court (Oakland)